■ BETTY WINGERTER, as Administratrix of the Estate of PETER P. WINGERTER, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 54724.)—Cross appeals from a judgment in favor of claimant, entered December 13, 1978, upon a decision of the Court of Claims. At approximately 7:00 A.M. on March 13, 1970, one Peter Wingerter, age 44, was killed when the tractor trailer he was driving left the paved portion of New York State Route 17 in Wurtsboro, New York, and plummeted down a 60-foot embankment striking a tree. Route 17 is a four-lane limited access highway with a grass mall separating the east and westbound lanes, and it was concededly wet and slushy when the mishap occurred. Just prior to the accident, decedent had proceeded down a relatively straight 5% grade for two miles, and he was in the process of passing through two curves to the right, the first of

which had a radius of 4,000 feet with a highway distance of 688 feet and the second of which was much sharper and had a radius of 2,000 feet with a highway distance of 2,053 feet. In this second curve, at a point 600 feet before the site of the accident, there was located a 65-mile-per-hour maximum speed limit sign. The present action was commenced by decedent's widow who is the administratrix of his estate, and she alleged that her husband's untimely death was caused by the negligence of the State in designing, constructing and maintaining the portion of Route 17 involved in the accident and in failing to adequately warn users of the highway of its dangers. Following a trial, the Court of Claims ultimately concluded that decedent's death was caused by the negligence of the State, and claimant was granted a judgment in the sum of $250,000. Both parties now appeal. Upon our examination of the record, we find that it clearly supports the trial court's conclusions regarding the negligence of the State, and in so ruling, we would initially note that the State is concededly duty bound to construct and maintain its highways in a reasonably safe condition (Highway Law, § 12) and to warn users of its highways of existing hazards *(Hicks v State of New York,* 4 NY2d 1). Applying these settled principles to the case at hand, we find ample evidence that the section of Route 17 at issue lacked sufficient superelevation or banking and that it also lacked a spiral or transition curve leading into the sharp 2,000-foot radius curve. These conditions plainly did not meet the 1954 standards of the American Association of State Highway Officials, and even if we assume, as argued by the State, that these standards are inapplicable here, the conditions likewise did not meet the State's own design standards. Additionally, there was evidence that the subject highway surface had dips and bumps which tended to cause the wheels of vehicles to leave the road surface and, therefore, reduce the friction of the vehicles' wheels against the highway, and the court properly ruled that the State was negligent in failing to improve the riding surface, particularly when it had ample notice of the numerous skidding accidents which had occurred at the site in question. The court was also fully justified in finding the signing of the area inadequate and misleading in that the presence of the 65-mile-per-hour speed limit sign and the absence of a "slippery when wet" sign in an area which the State itself had designated as "out of control" because of its numerous accidents would obviously create a false sense of security in drivers traveling the highway (cf. *Fisher v State of New York,* 78 AD2d 952; *Brock v State of New York,* 58 AD2d 715). The State's negligence having thus been established, nothing further has been presented which would warrant our disturbance of the court's additional findings that decedent was free from contributory negligence and that the State's negligence was the proximate cause of the accident. In a wrongful death action, the State has the burden of proving contributory negligence (EPTL 5-4.2; Court of Claims Act, § 9, subd 9), and it has failed to produce any evidence suggesting negligence on the part of decedent. As for the issue of proximate cause, the evidence must be viewed in a light most favorable to claimant *(Wragge v Lizza Asphalt Constr. Co.,* 17 NY2d 313) who is held to a lower degree of proof in a death action *(Noseworthy v City of New York,* 298 NY 76), and under the circumstances presented here a verdict in favor of claimant was certainly proper (cf. *Fisher v State of New York, supra; Brock v State of New York, supra).* Lastly, we turn to claimant's contention that her ultimate award was inadequate, and on

this question we agree that the court's determination cannot be permitted to stand. At the time of his death, decedent was married and the devoted father of three dependent children, a 16-year-old daughter and twin daughters 12 years of age. Moreover, he had a life expectancy of 31.47 years and a work life expectancy of 20 years with projected earnings during this period of approximately $1,000,000. Consideration of these factors alone conclusively establishes the inadequacy of the $250,000 award, and, consequently, this case must be remitted to Court of Claims for a new trial solely on the question of damages unless the State consents to an award in favor of claimant in the amount of $500,000. Judgment modified, on the law and the facts, and a new trial ordered as to the issue of damages only, unless, within 20 days after service of a copy of the order to be entered hereon, the State shall consent to a judgment in favor of claimant in the amount of $500,000, in which event, the judgment, as so modified, is affirmed, with costs to claimant. Mahoney, P. J., Greenblott, Main and Mikoll, JJ., concur.

Herlihy, J., dissents and votes to reverse in the following memorandum. Herlihy, J. (dissenting). The accident in question occurred on March 13, 1970 at about 7:00 A.M. on Route 17, also known as the Quickway. The road was constructed in the 1950's and was a multiple-lane highway, two lanes going east and three lanes going west separated by a grass mall. The accident happened on that part of the highway which goes through the Catskill Mountains and the decedent's vehicle was proceeding in an easterly direction and descending a long winding hill and curve. The Court of Claims found, *inter alia*, that at the time of the accident the decedent was operating his tractor trailer between 25 to 30 miles an hour and that the surface of the eastbound lane over which the vehicle was traveling was covered by three to four inches of wet slush which had previously been salted and sanded. It is also undisputed that the decedent was making the trip in company with another tractor trailer operated by a fellow employee and which was the lead vehicle traveling approximately 40 to 45 miles per hour. There was testimony as to the tire tracks indicating the movement of the decedent's vehicle prior to leaving the highway. The decedent was familiar with the road, having traversed it on numerous occasions. Mr. Holmes, the driver of the other tractor trailer, testified that he and the decedent stopped at a diner apparently not too far from the scene of the accident and discussed experiencing icy and slippery road conditions which the witness described as a "rough night". A trooper who came to the scene of the accident described the conditions as "difficult going". The photographs in evidence, albeit taken after the road had been plowed, bear out the statements. There was also testimony that the decedent told his fellow employee "I don't like the way the vehicle is handling". As the case comes to this court, the claimant is entitled to the most favorable version of the testimony and any fair inferences that may be drawn therefrom. Considering the rule in *Noseworthy v City of New York* (298 NY 76, 80), the question on this appeal is whether the State is negligent and, if so, whether that negligence was the proximate cause of the accident. The rule with reference to the construction, care and maintenance of the State's highways was long ago enunciated in *Boyce Motor Lines v State of New York* (280 App Div 693, 696, affd 306 NY 801): "The mere happening of the accident, even in the death case, created no presumption of liability against the State. *(Tortora v. State*

*of New York,* 269 N. Y. 167.) The State was not an insurer. It had a duty to construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. But even so, a certain risk was unavoidable. Roads cannot always be straight and level, and curves with descending grades are always potentially dangerous. A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely." In *Tortora v State of New York* (269 NY 167, 170), the Court of Appeals said: "When an automobile swerves and leaves the road for no definitely assignable reason, it is altogether possible that the accident was due to either of several causes, the failure of the steering gear or a lapse on the part of the driver. Both frequently happen. When a cable parts, as in *Duhme v. Hamburg-American Packet Co.* (184 N. Y. 404) or *Anderson v. International M. M. Co.* (238 App. Div. 509; affd., 264 N. Y. 425), it may with fair likelihood be the result either of a defect in the cable or a sudden strain applied to it. In all such cases the balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation." It is also a well-established principle that the State is not the insurer of the safety of travelers using its highways (see *Stuart-Bullock v State of New York,* 38 AD2d 626, 628). The court found the State free from negligence in failing to groove the pavement and also found no negligence as to the type of guardrails in place at the scene of the accident and as to the width of the shoulder. In *McCauley v State of New York* (8 NY2d 938, 940), the Court of Appeals reversed the Appellate Division which had held the condition of the road shoulder and guardrail to be negligence, stating: "it cannot reasonably be said in light of all the surrounding circumstances, including the weather and road conditions and the driver's conduct, that the fatal happening was due to any neglect, failure or omission of the State to perform a duty owed." The above findings of the Court of Claims should be affirmed. The court, however, found the State liable in design and construction of the highway in respect to curves; in design and construction of the highway with inadequate superelevation; with respect to allowing dips and bumps to exist on the pavement, and, in failing to post adequate signs to warn of a dangerous condition. It should be further noted that the lead tractor trailer, operated by the witness Holmes, traveled the road without difficulty almost immediately prior to this unfortunate accident. The issue resolves itself into whether the court's finding of negligence—with which I differ—was the proximate cause of the accident. The court's findings with reference to the State's negligence in design and construction of the highway—albeit there was conflicting testimony as to whether the curves and superelevation were of proper construction under the existing road conditions at the time of this accident—were based on pure speculation and surmise and relied upon testimony as to prior accidents bearing no factual similarity to the present situation. There is no evidence or fair inferences that such conditions were or could be a proximate cause of the happening of this accident. In other words, whether the road was properly constructed or not, which is disputed by the State, the rule enunciated in *Weiss v Fote* (7 NY2d 579, 589) should still be the test: "liability for injury arising out of the operation of a duly executed highway safety plan may only

be predicated on proof that the plan either evolved without adequate study or lacked reasonable basis." The present record does not sustain the findings of the Court of Claims as there is no basis for a finding of proximate cause. With regard to allowing dips and bumps to exist, a report in evidence made some time prior to the accident stated in part: "Roughness and the presence of dips and bumps in the pavement apparently account for some of the uneasiness experienced in traveling the section." To the contrary, one of the State's witnesses (Corbin), first sworn by the claimant and thereafter testifying for the State, said that in February, 1970 (one month before the accident) "We observed that the pavement was slightly deteriorated but was not a condition which needed immediate repairs". It should be noted that this was winter weather in mountainous territory. The claimant did not sustain the burden of proof but, if so, it is pure speculation and surmise to consider the condition a proximate cause of the accident. As to the failure to post proper signs, assuming such were necessary, it should be reiterated that the finding of the court was that the vehicle was traveling between 25 to 30 miles per hour at the time of the accident. Signs of dangerous conditions, speed or slippery when wet, or the lack thereof, would not in any way have prevented the happening of the accident in view of the speed of the said vehicle. In this respect, this case differs substantially from the factual pattern in *Brock v State of New York* (58 AD2d 715) or our recent case of *Fisher v State of New York* (78 AD2d 952). Giving consideration to the rules of law previously mentioned, it is apparent that the findings of the Court of Claims with reference to negligence are not, under the circumstances, the proximate cause or causes of this accident. The decedent's fellow driver had passed over the same road within minutes of the happening of the accident and without difficulty. From the present record, inferences could be fairly drawn that the accident happened because of trouble with the "rig" or because the road conditions were "pretty rough going". In such circumstances, a claimant cannot prevail. (See *Frohm v State of New York*, 34 AD2d 724, affd 28 NY2d 703.) The judgment should be reversed and the claim dismissed.